Thank you, Your Honor. May it please the Court. Good morning. My name is Celia Rhoades with the Federal Public Defender's Office, and I represent Mr. Rudolph. This appeal revolves around a five-year sentence that Mr. Rudolph received in 1996. Raise your voice, please. Sure, Your Honor. And whether the district court had sufficiently specific and reliable evidence in the record before it to conclude that a portion of that sentence was served eight years later, in 2004, and therefore could be counted for career offender purposes. That was the disputed claim in the PSR, which the district court agreed was peculiar, and the government offered no evidence to support it. But over defense objection, the district court applied the enhancement anyway, because the defense provided no documents disproving the PSR's claim, saying the record before me is that he was on parole and he was revoked. Under this Court's case law and every other circuit's case law, as far as I can tell, that was error. First, because neither the PSR nor the government provided a sufficient and specific evidentiary basis for the disputed information. Second, because the district court lacking that evidence then misallocated the burden of proof to the defense. And third, even if the district court could have simply credited the conclusory information in the PSR, those claims did not actually answer the relevant question, which was whether Mr. Rudolph's 1996 conviction in particular, rather than the other two convictions during that same time period, resulted in his imprisonment within the 15 years leading up to the federal offense. To that first point, neither the PSR nor the government provided a reliable and specific evidentiary basis for the disputed information. Why wouldn't the PSR be sufficient? So in this case, Your Honor, and I think there's a little bit of confusion about what the source was in the PSR. The government admits in a footnote that this paragraph, and this is at Record Site 192, paragraph 58, lists the various revocations. So that's a bare claim, a bare unsourced claim. And says, according to court records, so it does say court records for the conviction itself, the defendant possessed with intent to distribute cocaine. That's not disputed. There is no source provided for the revocation information with respect to the 1996 conviction in particular. The PSR just references back to the docket for a different conviction, the 1991 manslaughter conviction. Now, that paragraph does say the defendant's adjustment to supervision for that particular conviction was unsatisfactory. According to Louisiana Department of Probation and Parole records, the defendant failed to comply. There's a couple of problems with that. So the first is that there's not a specific source provided for the disputed information. Does the PSR have to source everything that it states? I mean, I thought there was a parole officer that said, well, it would be in the court records. So there was some reference, general, but a reference nonetheless. So the probation didn't, when they responded to the objection in the addendum, probation didn't actually say any source for this. So the only source that's provided is in the paragraph about the 1991 manslaughter conviction. And then sentencing, as far as I know, probation didn't say anything. And the government just sort of speculated about what the evidence could have been. And they said, well, it could have been, sometimes we draw from rap sheets, sometimes we draw from certified court records, which is not where this information came from. But I want to make clear, I think one of the problems with this is that the information from that manslaughter conviction, the 1991 conviction, is then copied and pasted just into not only the 1996 conviction, but then also below it into this 2004 cocaine conviction. So it's identical information, identical terms, and identical dates for revocation. And that's a problem because the PSR has to provide specific information indicating which one in particular. I'm sorry. My southern ear. Yes. A little bit bad. Okay. Sorry. I'll try to slow down, especially with the volume issue. I also want to say, I think it's a little bit of a red herring, because it's not necessarily enough for the PSR to sort of generically cite to records. And this is what the DC Circuit talked about in Price. If there is a dispute about an underlying detail related to the conviction, and the DC Circuit makes a good point, but it's not going to be enough to just say, well, somewhere in court records it says this, because the district court's job in that circumstance, when there's a dispute, is to determine the reliability, whether that evidence... But it may be great what the DC Circuit says, but our circuit, we have Trujillo, which says the defendant bears the burden to show that the PSR is materially untrue. What evidence did the defendant offer that substantiated that burden? So, Trujillo also says the court may adopt facts contained in the PSR if those facts have an adequate evidentiary basis with sufficient indicia of reliability. Only then, under Trujillo and all of this court's other case law, does the issue of rebuttal evidence even become relevant. So, for example, if you look at... I don't think that we do have a finding by the district court that it was. I think that all the district court said, well, I don't have much information about this. The government's given me nothing. So, the only thing I have in the record before me is this claim in the PSR. And the district court missed a step when it did that, because the district court, in order to determine that the PSR statements have a sufficient indicia of reliability, have to determine the underlying evidentiary basis. And that's why this court in Floyd said that rule about the reliability of the PSR is not without limits. So, district courts can rely on claims in the PSR if the information has sufficient indicia of reliability to support probable accuracy. And that complies with Chapter 6 of the guidelines would say that as well. And for information to be sufficiently reliable, there must be an acceptable evidential basis, which is why this court has reversed many times in situations where the PSR has a claim, but there's not sufficient evidentiary support. So, for example, in Salamanca Rosas, in Zuniga, and in Herrera Solorzano. And in those cases, there were actually court documents. So, we know not only is it not enough to just say court documents, but the court documents that it's based on have to be sufficiently reliable, and they have to contain the relevant information with a certain degree of specificity that actually answers the question. Well, here we have documents. I guess there's a motion that's been granted in this court to supplement the record. There's a motion pending to further supplement. I don't know whether we consider those or don't consider those. They weren't before the district court, but what the documents show is that the PSR was right. Isn't that correct? No, I don't agree, Your Honor. I think they're very difficult documents to read, and the government hasn't really provided much of an explanation of what they say. Does that mean we should vacate and remand? Are we going to end up right where we are now? I definitely don't think we will end up right where we are. And I'll just say, certainly it's our position that it was the government's burden below to produce evidence, rather than just speculate about what the evidence might be. And so, this court has, for example, in Getz, in this situation, just vacated it with instructions. Now, that being said, certainly we think that if this court is inclined at all to allow consideration of new evidence, that it should remand to the district court in the first instance. What do you say the evidence shows or doesn't show? Sure, so... Or consider both of the documents that have been... the government wants to supplement the record there. Yeah, so the first set of documents included a certified conviction. There's no dispute that he was convicted, so I don't think that that's particularly relevant. Well, doesn't it come down to which... his probation was revoked, and he had several different convictions. Isn't it a question of which convictions... what's your best argument about what those documents show? Right, so under this court's case law, and other courts also, so in Getz, for example, which the government relies on, but I think is not particularly helpful for its case, but also Covington, for example, and Sanchez and the Sixth Circuit, those courts have made clear, and this court has made clear, that when you have multiple convictions that could be contributing to a particular revocation and subsequent incarceration after that revocation, that the district... that the government has the obligation to prove with specificity which of in this case, because the government's entire argument hinges, as it must, on the idea that every single moment of time, whether it was incarceration or parole, had to run consecutively, because the government has a math problem. The numbers just don't add up, and it can't possibly be the case that these convictions weren't expiring unless every moment was run consecutively. So that makes it particularly important in this case to have specific information, whereas in the PSR, we have the opposite of that. All we have is identical information claiming revocation and really long periods of imprisonment that exceed the sentence for the 1996 conviction, which had the shortest sentence. So the PSR is attributing that to all three convictions, and that's fully fatal. So what is the remedy? We vacate and remand for resentencing? So I do think, no matter what, this court is going to have to vacate and remand, because even if the career offender enhancement is removed, whether it's by this court or the district court, it opens up a whole new set of issues that will then determine the guidelines, because the career offender issue mooted out other sentencing issues. Now, I would say our preference certainly is for this court to say, the government bore the burden, it didn't bear its burden, and so we remand with instructions not to apply the enhancement. That being said, of course, I think if this court is inclined not to do that, then a remand with instructions that the government is allowed to then present this new evidence, if that's the evidence it would like to rely on, and then prevent opportunity for rebuttal evidence. What did you say that evidence shows? So if you look for example, I can give a couple of examples. So the criminal history document, and I don't know what that is, they just refer to it as a criminal history document in the government's first motion. So to take that for example, and I don't know how closely the and problems, and also there's an aggregation of these sentences. So first the document, there's an aggregation of all of the sentences together. So first the document doesn't include all of the parole revocations that are listed in the PSR, so it's inconsistent. And second, the document includes these obvious errors that's indicating confusion among those convictions, or at least an aggregation of them. So to take for an example, and I don't know if you have the document in front of you, but it dates 142. There's a paragraph on that page that appears to be purporting to describe a revocation of a conviction with the same docket number as the 1996 conviction. That's the second paragraph. So presumably, I'm assuming, though the government doesn't say that's what it would like this court to notice, but the paragraph listing the docket number, it also lists a seven-year sentence instead of the five-year sentence actually imposed. So it's listing the sentence for that later 2004 conviction, and the date of imposition is listed as 5-18-1992, which is the sentencing date for the 1991 manslaughter conviction. So this paragraph is combining these three convictions into one, and that happens multiple times throughout the document. The document also repeatedly incorrectly lists parole terms for the 1996 conviction, and that's obviously extremely important because that's the disputed issue in this case. So for example, if you look at Bates 139, the parole term is listed as lasting eight years for the conviction with the docket number of the 1996 cocaine conviction, and that's obviously wrong because it's a five-year sentence. There's not an eight-year parole term, and by that time, he had already served time on it, so it certainly is nowhere near an eight-year parole term. So what I think is happening in this document is similar to the PSR. It's combining the separate parole terms for multiple convictions and then listing the aggregate term while not differentiating among them, and it's doing that. So it's creating this sort of Frankenstein term, and if it's doing that, it's also going to be listing any revocation within that aggregated period as attributable to all of the offenses associated with that term, and that brings us back to the problem with the PSR. The PSR is also not differentiating between these convictions. Identical information was just copied and pasted for each of these offense, and I don't know where this information is coming from. I don't even really know what this document is because we don't have much of an explanation of that, but criminal history databases like this one, they just pull information from other records, sometimes correctly, but as we see with these errors, often incorrectly, and I think under the most charitable view of this document, this database just doesn't need to differentiate between these three separate convictions for parole and imprisonment, and that's fine for Louisiana purposes, especially for internal databases like Louisiana's Cajun system, for example, which doesn't include actual judgments, actual adjudicated documents related to these various revocations. It's just tracking parole and incarceration status generally to these underlying details don't necessarily matter, but they do matter for our purposes. The government needs to prove with specific and reliable evidence that the 1996 conviction, in particular, resulted in Mr. Rudolph's imprisonment within the relevant time period, and records that don't differentiate among the three convictions don't actually answer the question. Certainly records riddled with obvious and relevant input errors, wrong dates, they don't bear the sufficient indicia of reliability, so at the very least, and this is getting back to your question, Judge Wilson, you know, agree or disagree with my analysis on that. These are complex factual and evidentiary determinations that are ones that the district court should have been determining in the first instance using proper sentencing procedures and complying with this court's case law in due process. Let me ask you really quickly, our information from the BOP is his release date is in December 37, and so any relief that you could get on resentencing doesn't put him anywhere close to 24, is that right? Sorry, close, oh, you mean, yeah, so his release date wouldn't be imminent. We're not in a time crunch, so this is at least- I just want to make sure that we're not worrying- Oh, yes, thank you for asking that, yes. We're at least talking about a six-year swing at minimum, and then- Eight, maybe maximum, but I just want to make sure we're not needing- No, I appreciate that question. No, this wouldn't be imminent relief. His sentence was extremely long, and he's now 50 years old, so this is really about him getting out at all, so. Chief Judge Richardson, may I proceed? Thank you. Good morning, your honors. May it please the court, Kevin Boyden for the United States. Your honors, this court can affirm this case by simply applying its longstanding general rule when it comes to sentencing. While the government has the burden to prove the facts necessary to support an enhancement, information in a pre-sentence report is presumed reliable and may be adopted by the district court without further inquiry if the defendant fails to demonstrate by competent rebuttal evidence that the information is materially untrue, inaccurate, or unreliable. But as a predicate to that, doesn't there have to be some sufficient indicia of reliability with regard to that evidence? Yes, there does, Judge Gray. It doesn't recede any burden on the defender, does it? Yes, it does, and that comes from the PSR and the state consultant. An indicia of reliability about a statement typed up in a PSR that he was revoked for that 1996, 94, that charge? Sure. Two quick answers to that. The first would be the PSR itself, which this court has started with, presumed reliable. The second reason for this specifically was because the PSR says where it came from. It starts off by saying, are Louisiana state probation and parole records when it starts talking about the criminal history? And this court in Marshall a long time ago, which is also a career offender, said that's fine because... There's a lot in that criminal history that is undisputed. Yes. But unfortunately, he's got a long criminal history, and the offense that's used as a predicate for this enhancement is the one we're concerned about. You're saying that opening statement covers everything else that's said after that in what is a very long PSR. I do say that, Your Honor, for a few reasons. One, and we're talking about pages 231 to 232 of the PSR. And to take... If that's not enough, we would be in a situation where we're requiring copying and pasting and robotic incantations in every single paragraph, and that's not necessary. Well, but he got... They received objections, very detailed objections from counsel in advance of the hearing. So it's not like he surprised them with an objection to this. They got very detailed objections, and they knew that was an objection. So how... Is it difficult to get court records and court documents? No, certainly I don't think it's difficult, and it's certainly a belts and suspenders approach that can be done, but two things to that. First, I agree that there were detailed objections to some things, but if you take a look at Record 267, and we make our point in the brief, this is at pages 257 to 258, when it comes to the PSR objection for career offender, it's not that specific. It just says, I object to the career offender enhancement, and where there are spots where there's supposed to be facts and law, it's noticeably not present there. Now, I don't know if that's a draft. I wasn't able to find anything else more sufficient. But what about counsel's point that where you have these multiple convictions, some of which would apply to support the enhancement, I guess some would not, isn't it very relevant to know which one was served within that 15-year period? In other words, you can't just lump them all together and say, well, he was probably serving one of them, so therefore it can apply. In other words, if probation was revoked for the wrong offenses, and that's why he was serving in 04 or within the 15-year window, that's problematic for the government, isn't it? It would be problematic if that's the case, but I think that's a secondary question, Judge Wilson. I think first it comes down to where does that evidence come from, what is reliable? First, I don't... Wouldn't the government have the obligation to tease out which conviction was revoked when and therefore at least connect the dots? I'm sorry, I didn't mean to interrupt. I certainly think it could if the situation was not there and if there was not something that can be relied upon in the PSR, and I think that's what makes this case and this PSR different from some of the other cases that opposing counsels relied on. What is it in the PSR that can be relied upon? It's very clear. It's evidence. Well, one, it's laid out very clear, and first, I do go back to where probation has said according to state parole records, so right then we have the probation officer saying this information is from state parole records, and this court... I recall also, I mean, but to Judge Graves's point, I mean, you've got this, and I ask counsel opposite, you've got this general statement from the parole officer, which is evidence. This comes from the records, but it's general evidence. Is that enough? This, in Marshall it was, in another career offender, this court certainly said that is the type of hearsay statement that a court can find reliable, in addition that people can rely on it, and then I think what you have here when you do go into the PSR, there are very specific dates teased out. This is not the situation of Herrera, Sorlazano, or Floyd, or Covington, or McNeil, where the court had to fill in a gap that was at the PSR. Herrera, Sorlazano, for example, the judgment said probation. The issue was whether someone was in jail. The state judgment said probation. To find that someone in jail, the district court and the government who relied on it had to make the speculative leap and say, well, that must mean this in the outset, but that wasn't about reliability. That was about filling in the gap. Floyd is also the situation. There was a prior conviction of when he was challenging that he was actually convicted of the prior offense, and the only thing you had was the probation officer saying, well, I had a mug shot, and I sent that to another probation officer who said, that looks like the guy here, so the court had to make the leap of logic to speculate. Covington is also clear up from the 8th Circuit and McNeil as well. In Covington, it was unclear whether the defendant was revoked or placed in jail. In McNeil, the PSR made it impossible to tell if the defendant was serving 2004 sentence at the time of the new offense. That's not the PSR itself is very clear. It says on this date, he was revoked. On this date, he was released. On this date, he was revoked. On this date, parole expired. So the PSR itself is clear. There's no requirements of a leap of logic or filling in the gaps by the district court. In this case, as there was in the other one, and that's at page 231 to 232, paragraph 57 of the record. If the objection is specific enough, that seems to me to switch the burden. The government bears the prominence of the evidence burden. In my understanding, if this is not right, let me know. At sentencing, Mr. Rudolph renewed his objection. He argued that his 1996 conviction was too old to be counted and that the PSR did not provide any state court documents to establish that his parole was revoked for the 1996 conviction within the applicable time period. Now, that seems pretty specific to me. At the sentencing hearing, I agree that defense counsel made that argument. That's not in the actual written objections to the PSR, but I agree. That was raised. That specific objection. At the sentencing hearing, absolutely. It's not too late to make it at the sentencing objection. No, absolutely. At the sentencing hearing. So where does that leave us? It leaves us at the point where this court has always said that mere objections are insufficient to relieve the defendant of that burden. The government does have a burden. The government does have an enhancement burden. Well, it seems to me that Lee switches the burden to the government. He's got the proponents of the evidence burden to produce the state documents that it says support its statement. Well, I would disagree that it requires the government to produce any certain type of evidence. I think the burden is but I think in this situation, it can rely on the PSR because the PSR statement of that this came from court records as an addition. Court records don't say that and then whose burden is it to go show the court records to say that? I think it's the government. I would disagree, Your Honor, because I think this court has said when you have reliable statements in the PSR and a defendant is challenging those statements, it is on the defendant to produce competent, rebuttable evidence. It is repeatedly said. And the evidence of reliability is that a probation officer said it. So anything any probation officer says is there's just a presumption of reliability and you can't rebut it by making an objection that says, no, that's not what that's not what happened. This court has said no to my understanding and going back a long ways to Marshall and Millsaps where competent hearsay that bears reliability can be relied on. There's a presumption of reliability and you rebut that reliability not with an objection, not with argument, but with competent evidence. And when you look at and that's important. Would there, if he wasn't revoked, his parole wasn't revoked for the 1996 conviction, would there be evidence of that? Evidence of an event that did not occur? I believe there would, because one, I think I've certainly got to go find that. Well, one, I think yes. If we're talking about burden and presenting competent evidence, yes. Competent rebuttal evidence, yes. And I don't think that's a hardship that we're beyond trial. How do you produce evidence that doesn't exist? His point is there are no state records that show I was revoked for that. How do you, you know, you can produce 50 pounds of state records, but if they don't show that, they don't exist. Well, I'm sorry. Well, I don't think it's one that I can't produce something. Certainly I've seen in other cases where, I'm clearly going outside the record here, but in other cases where defendants have gotten letters saying, you know, you're off paper, you have been given a state pardon, there are documents in the court records. Certainly defense can go raise that as well. Well, my point is the government doesn't seem to be able to, at this good day, to produce state records that show when his parole was revoked and what for. And he's saying they don't exist. But again, that's a statement of, there's no backing to that statement. Well, there's no backing to the government's statement that his parole was revoked for conviction. Right here as we sit here, I haven't seen it. Sure. No. And again, that's one, one, one again, we do have the probation, which, and we may have a disagreement on that. I understand it. But I think the court has, I think this court's precedent is clearly allowed both sides, including the government, to rely on statements of PSR. Yeah, but you can't, you can't say that the defendant has the burden of proving a negative. No, but I, but I also don't think it's, I don't think it's necessarily negative because there could be a paper saying you are, you were released. You could have been released. Again, letters have gone out saying there have been first offender parts. But we all agree he was released. That's the only way he could have been revoked for parole is if he was released. Everybody agrees he was released. You need to have evidence that his parole was revoked for the 1996 convention. And that's what we don't have. And of course, the reason we, the reason we supplemented the records was so that we would have the whole world in front of you. So that when I say the probation says we're relying on probation for all records, you would have the whole world. Maybe I'm wrong. Tell me where the documents that you want to supplement with the record with clearly show what his revocation was for. The most, from the most recent ones I gave you, Your Honor, would be the ones from Cajun. I'm trying to tell you exactly which page this would be. One, two, three, four. And of course, there, I certainly agree with counsel reading this, but we're looking at the case in question on the court docket is 96-1903. And where you see the closed code, full release, and we see a closed date of December, of 2012, May 5th. You see below that on 96-1903, RUV, simply revocation of a closed date in 2011. You also see how carried, AG, which would be that sentence that's aggregated with 92-181, which is the manslaughter. So, I mean, the documents are there. It would certainly, again, and I'm not, I'm bringing that to you solely when I say the whole world is in front of you when I make reference to probation saying state and parole records. But just to be clear, your position is different from counsel opposite. You say the documents show that this 1996 conviction's parole was revoked in 04. Yes, and that it would be going on until, as the parole, as the pre-sentence report says, was not revoked until later. And that's an important part because it does get back to the obligation of competent rebuttal evidence. Judge Richman, you asked, you know, when the defendant makes an objection, doesn't that trigger everything? Well, I think it's important to look at what happened here when the defendant did make that objection. Again, did not provide rebuttal evidence as required. He gave nothing more than the objection itself, one written objection and then the objection. Millsaps rejects the argument and Millsaps is not a reason, it goes back a little while, but Millsaps rejects the argument that the objection is sufficient to remove that burden from the defendant. You know, Booker also, we cite that in our briefs about criminal history points and regarding a potent parole revocation. But then he attached nothing to his objection. He presented no evidence. That's important because when you look at Herrera-Silverzano, which defense lies on, it was about a judgment in probation and the PSR equal jail. And if you go take a look at the briefs in those cases, you'll see that there was, the fence actually attached the copy of the judgment in question to his written objection. So the defendant did something to present comment. Well, here's my point and it's a small one, maybe. I'm just saying, let's suppose there are no documents in the state record that show what the revocation was for. He has nothing that he can point, he knows he was revoked, he knows he was re-imprisoned, but the state record just doesn't show for which of the many convictions, there's nothing he can attach to rebut the PSR. To me, he doesn't, our case law does not address that situation. Well, I think Judge Richman, that would be a slightly different situation from what you have here because if there are no records, that would, that in itself would be evidence rebutting the credibility of the probation statement that I question, we have a question based on the absence of something directly questioning a statement that everybody is relying on from the probation parole. Here, no one's questioning the probation parole statement. No one is attached. No, they are. They're saying that there are no state, his objection was the state records do not support what the PSA say and let's assume that in fact, the state records do not report, support what the PSR said. So to me, that does not shift that the government wins that because the defendant, there are no records. So the PSR can't be supported. It's not the defendant's burden to come up with something that doesn't exist. Do you see what I'm saying? I see what you're saying. I'm still not, I guess I'm still, we may be reading his objection directly. I did not take that argument to think that the probation officer that was challenging the probation officer's credibility. Not credibility. It's just saying that they said this and there's nothing to support it. At that point, that's just an argument then, I think. And I think this court has. But you're saying, I'm saying, you're saying he has to support that with something and I'm saying, I'm saying there's no support. It doesn't exist to, we don't know what happened. And in that situation, the government loses. And if it's, if it's, if you find that the record based on that before the district court was that unclear that the district court could not have made the decision to do it, then it's a use of discretion and you would be vacating and remanding to clear it up and go back. And I think that would be the proper remedy if you did that. But I don't think the court should remove all the burden from the defense because one, this case law has not done that in this situation. The government. It's not a matter of removing the burden. It's a matter that the burden's never triggered. We don't, we don't get there yet until the government does its homework. And that's where I disagree with you, Judge Wilson. The government can easily say, here's what we relied on. He's saying the state records don't show that. And it's easy for the promotion efforts to pull out his file. Yes, it does. Here it is. This is what I relied on. And the district court can decide, well, that didn't happen here. I think it would also be just as easy and consistent with what this court has said, that when there are statements in the defense, to then pull out the records and submit it and say, this is where, this is why it's wrong. This is my rebuttal evidence to the PSR. And that was not done here to trigger anything. Instead, every. You're not going my hypothetical, but I'll be arguing with you because I just disagree with you. No, I understand. But I think it's important to point out that that has been, I think it has been triggered to Judge Wilson's question because the PSR starts off and makes these statements. And at that point, it is up to the defendant to say, you're wrong, and here's why you're wrong, and here's the evidence to show it. And that kicks things back into further situations. And as I read the case law, that's where you're going. And if I'm missing the hypo, Judge Rick. You are missing, but I'm not going to. But if I understand your question, I agree. I agree there was no records. My colleagues agree with me, we'll put it in writing. But if it's a situation, again, if there's no records at all, I do think that would question credibility of the reliability. But I still think it's incumbent on defense to put that forward and say, here's why. And here's what it is. Instead, defense counsel here did things the right way. He said, here's saying the PSR should not be considered. This court has rejected that in Marshall. It said there's no proof of what he was in parole. He could have sought documents. He acknowledges that at least there was the defendant's rap sheet. He did have that as discovery. And he assumed and going on the assumption that the full term sentence had expired in 2001. That's an incorrect statement under Louisiana law. And we point that out in a brief that when there is a revocation, the revocation operates consecutive, the new sentence operates consecutive to the revocation, unless the judge says something else. And we did supplement with a public record that said the 96 five-year term was sentenced, was to run consecutively to the parole term. So right away, the statement of the full term expired in 2001 was an incorrect statement under Louisiana law. And I know opposing counsel said it can't possibly be the case that it can run that long, but it can. And 574.6 and 574.10 are some of the Louisiana cases we say. You know, this, and I just go back to this, that this court has been clear for decades in addressing the obligations in this context. Yes, there is a burden by the government. But even if the government agrees with the defendant that an enhancement should not occur, which was the case in Zuniga in the 3P1.1 role adjustment, the district court says, yes, it's there based on facts in the PSR, even though the government was agreeing with the defendant that it shouldn't. And if the government has the burden, how can that happen? Well, it happens because this court said that still does not relieve the defendant from coming forward with competent rebuttal evidence to rebut the facts in the PSR. And again, if in the end of the day, it's too unclear, if the court feels it was just too unclear for the district court to make this and finds an abuse of discretion, vacate it, send it back, and we can certainly redo it and put more information. But at the end of the day, and under this court's law, the statements in the PSR make it reliable. The court could rely on it in the absence of any rebuttal evidence we ask the district court to provide. I'll try to be quick, make a few brief points. First on the Cajun records, this is the first time we're hearing any explanation of what these records mean. There are codes in there, I frankly couldn't discern them. I can tell that on the page cited by the government, there's an incorrect name listed, which is Eugene Randolph. And I think we have no idea what these records mean, if they mean what the government's saying. This is a totally inappropriate time to be litigating that with five minutes of rebuttal and oral argument. So certainly to the extent that this court is even considering thinking about these records, we would urge to remand. I also want to just correct a number of things in the record. The government said there was only generally an objection in the written objections to the career offender enhancement, nothing about the 1996 conviction. That's incorrect at 258 of the record. He specifically objects to the scoring of the 1996 conviction. That's very clearly about the age of the conviction. We know it was clear because probation specifically responded at 247, just reiterating the same exact information in the PSR, but providing no source. And the government itself responded at 264. And rather than saying this is what this is based on, the government just said, according to information contained in paragraph 58 of the PSR. So that was certainly before the government information beforehand. And the district court said at sentencing, I noticed this too. I also find it peculiar. So the district court knew exactly what the objection was, and so did everybody else. The government's also incorrect that it's incumbent upon defendants that anytime they object, they have to attach documentary evidence. That's not how the burden of proof works. And I think that we're seeing what the and I think that it was clear from the panel's questioning. But this issue of rebuttal evidence only arises after the district court has made an actual finding that the evidence is sufficiently reliable and specific and relevant. Only at that point, only after the district court finds that the government has met its burden is any sort of rebuttal evidence relevant. Also, it's not true that it's never the case that objections are insufficient. In Harris, this court specifically said that sometimes objections will make clear to the district court that there's a reliability problem that needs to be resolved. And that often comes up in situations like identity. Also, the PSR does not provide a source as probation state record parole records. In that paragraph, it's not true that that is being sourced directly from those records. We actually don't know for sure where the 1996 information came from. Probation never sat objection. The government never said. I also think it's interesting that the government has supplemented twice now and none of those records are what the PSR purported to rely on. So we still have no idea what that information is. The government also keeps saying under decades of case law, this court has upheld. But then the government only cites to one case, a case in 1990, Marshall. That was a case decided under plain error. As far as I can understand, the defendant sort of a shepherd like argument that sort of trying to pull a fast one would appeal saying, well, there was no documentation of these convictions. And this court said that the PSR cited to publicly available records. It was not a situation like this where there were specific reliability objections raised and discussion of this below. So it's an entirely different situation. And we know that this court reverses in situations like this where the records referenced don't provide sufficient information or the PSR doesn't provide sufficient details about that information to make a reliability determination. The final point that I want to make is that it's not sufficient for the government to say this is legally possible. So, for example, in this this court in Andre Aguilar, the government made the exact same argument about finality. The district court or the PSR claimed that a conviction was final. The defendant said it wasn't. And the government said, well, he didn't prove anything saying that it wasn't final. And under Louisiana, I don't know if it's Louisiana or Texas law, it could have been final. And this court said that's not enough. The Sixth Circuit said the same thing in Sanchez. It's not the same as proving a sufficient evidentiary basis to say, well, this is legally possible. That's not record evidence. That's a legal argument. The government bears the burden of proof in the situation, and that is actual record evidence with sufficient and disproved reliability to prove the disputed fact. What about their argument on page 11 of their brief? They specifically say that he committed the 1996 drug offense while he was on parole for the manslaughter conviction. And as a result, his by the operation of Louisiana law. Is that correct? So the government, I don't necessarily have a dispute with the idea that the sentences were consecutive, and the government has to argue that because, like I said, the time doesn't add up otherwise because we have 20 years to account for. That creates two problems. First is that that proves totally beyond dispute that they have to prove which one's being revoked because they're being run consecutively. And under that scenario, and for the math to work, both parole and in prison have to be run. But second, we don't know which ran first, and we don't know what proportion of that time period is being made up by either conviction. And we talk about this in our brief. So he would have started serving for the cocaine conviction on March 8th, 1996, and the government says he couldn't have been getting credit at that point for the manslaughter conviction. So we know that the sentence for the cocaine conviction must have run at that point. At some point during that time period, though, we have no idea when, if there was a revocation sentence for the manslaughter conviction. We don't actually have documentation of that, that the manslaughter was revoked during that time period, but assuming it was, we have no idea how long that revocation sentence was and also which sentence ran first. So it's equally possible that from 1996 until he was released onto parole, he wasn't revoked until 2004. So that's still an eight-year period. So we still have absolutely no idea whatsoever whether in 2004 he was being revoked for the manslaughter or the possession with cocaine conviction. And the consecutive sentences issue doesn't, I think, supports the idea that they have to be proving which conviction this is attributable to. And again, this court's decision gets Covington, Taylor in the Ninth Circuit, and Sanchez in the Sixth Circuit. Those cases are all very clear that the evidence must prove which one is being revoked, particularly when it's consecutive. How many years did Judge Glenn get in this case? Around 22 years. And I think Judge Richmond already asked you this. How many years difference does this 1996 revocation of parole determination? So at minimum, it's going to be a six-year reduction. And that would be bottom of the guidelines to bottom of the guidelines. But like I said, there's a number of other objections that were moved because the career offender enhancement automatically sets the base events level and criminal history score. And so six is the minimum, but it actually could be more than that. Thank you.